IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| MICHAEL FISHEL, Individually and derivatively on behalf of Alpha Epsilon Pi Fraternity, Inc. 5085 Rollman Estates Drive Cincinnati, Ohio 45236 | ) ) ) ) ) | Case No.: 1:18-cv-1703 JUDGE |
| Plaintiff | ) ) ) | |
| v. | ) ) | **COMPLAINT** |
| RICHARD STEIN, Individually and in his capacity as Chairman of the Fiscal Control Board of the Alpha Epsilon Pi Fraternity, Inc. 8815 Wesleyan Road Indianapolis, Indiana 46268 | ) ) ) ) ) ) ) | |
| AND | ) ) | |
| ANDREW BORANS, Individually and in his capacity as former Executive Director of the Alpha Epsilon Pi Fraternity, Inc. 8815 Wesleyan Road Indianapolis, Indiana 46268 | ) ) ) ) ) ) | |
| AND | ) ) | |
| LARRY LEIDER, Individually and in his capacity as Past Supreme Master of Alpha Epsilon Pi Fraternity, Inc. 8815 Wesleyan Road Indianapolis, Indiana 46268 | ) ) ) ) ) ) | |
| AND | ) ) | |
| SCOTT COHON, Individually and in his capacity as Supreme Master of Alpha Epsilon Pi Fraternity, Inc. 8815 Wesleyan Road Indianapolis, Indiana 46268 | ) ) ) ) ) ) | |
| AND | ) ) ) | |

JEFFREY JACOBSON, Individually and )
in his capacity as Supreme Master Elect )
of Alpha Epsilon Pi Fraternity, Inc. )
8815 Wesleyan Road )
Indianapolis, Indiana 46268 )
)
AND )
)
JASON OSHINS, Individually and in his )
capacity as Supreme Scribe of Alpha )
Epsilon Pi Fraternity, Inc. )
8815 Wesleyan Road )
Indianapolis, Indiana 46268 )
)
AND )
)
SCOTT KNAPP, Individually and in his )
capacity as Supreme Exchequer of Alpha )
Epsilon Pi Fraternity, Inc. )
8815 Wesleyan Road )
Indianapolis, Indiana 46268 )
)
AND )
)
ERIC FARBMAN, Individually and in his )
capacity as Supreme Sentinel of Alpha )
Epsilon Pi Fraternity, Inc. )
8815 Wesleyan Road )
Indianapolis, Indiana 46268 )
)
AND )
)
ADAM COHEN, Individually and in his )
capacity as Supreme Governor of Alpha )
Epsilon Pi Fraternity, Inc. )
8815 Wesleyan Road )
Indianapolis, Indiana 46268 )
)
AND )
)
JEREMY BROOK, Individually and in his )
capacity as Supreme Governor of Alpha )
Epsilon Pi Fraternity, Inc. )
8815 Wesleyan Road )
Indianapolis, Indiana 46268 )
)
AND )

2

)
)
MICHAEL WAITZ, Individually and in        )
his capacity as Supreme Governor of       )
Alpha Epsilon Pi Fraternity, Inc.         )
8815 Wesleyan Road                        )
Indianapolis, Indiana 46268               )
)
AND                                       )
)
ADAM SILVERSTEIN, Individually and        )
in his capacity as a Member of the        )
Supreme Board of Governors of Alpha       )
Epsilon Pi Fraternity, Inc.               )
8815 Wesleyan Road                        )
Indianapolis, Indiana 46268               )
)
AND                                       )
)
DANIEL GOLDBERG, Individually and         )
in his capacity as a Member of the        )
Supreme Board of Governors of Alpha       )
Epsilon Pi Fraternity, Inc.               )
8815 Wesleyan Road                        )
Indianapolis, Indiana 46268               )
)
AND                                       )
)
DANIEL HORN, Individually and in his      )
capacity as a Member of the Supreme       )
Board of Governors of Alpha Epsilon Pi    )
Fraternity, Inc.                          )
8815 Wesleyan Road                        )
Indianapolis, Indiana 46268               )
)
AND                                       )
)
BRANDON SIROTA, Individually and in       )
his capacity as a Member of the Supreme   )
Board of Governors of Alpha Epsilon Pi    )
Fraternity, Inc.                          )
8815 Wesleyan Road                        )
Indianapolis, Indiana 46268               )
)
AND                                       )
)
)

3

DOVI WIEDER, Individually and in his )
capacity as a Member of the Supreme )
Board of Governors of Alpha Epsilon Pi )
Fraternity, Inc. )
8815 Wesleyan Road )
Indianapolis, Indiana 46268 )
)
AND )
)
MARK SCHIFF, Individually and in his )
capacity as Vice President of ESPONDA )
ASSOCIATES, INC. and member of the )
Fiscal Control Board )
8815 Wesleyan Road )
Indianapolis, Indiana 46268 )
)
AND )
)
JAMES FLEISCHER, Individually and in )
his capacity as Executive Director of )
Alpha Epsilon Pi Fraternity, Inc. )
8815 Wesleyan Road )
Indianapolis, Indiana 46268 )
)
AND )
)
ANDREW FRADKIN, Individually and in )
his capacity as Vice Chairman of the )
Fiscal Control Board of the Alpha Epsilon )
Pi Fraternity, Inc. )
)
AND )
)
JONATHAN PIERCE Individually and in )
his capacity as a member of the Fiscal )
Control Board of the Alpha Epsilon Pi )
Fraternity, Inc. )
)
AND )
)
JACOB  KARNO, Individually and in his )
capacity as a member of the Fiscal )
Control Board of the Alpha Epsilon Pi )
Fraternity, Inc. )
)
AND )
)

4

)
JOHN DOES 1-25 (whose identities are )
not known to the Plaintiff) )
)
Individual Defendants )
)
AND )
)
ALPHA EPSILON PI FRATERNITY, INC. )
8815 Wesleyan Road )
Indianapolis, Indiana 46268 )
)
Involuntary Defendant )

Comes now Plaintiff, Michael Fishel, and for his complaint against the Defendants, states as follows:

## THE PARTIES

1.      At all times relevant hereto, Plaintiff has been an Ohio resident.

2.      Involuntary Defendant Alpha Epsilon Pi Fraternity, Inc. is a New York corporation whose principal place of business is in Indianapolis, Indiana.

3.      At all times relevant hereto, Defendant Stein has been an Illinois resident as Chairman of the Fiscal Control Board of the Alpha Epsilon Pi Fraternity, Inc.  He also serves as President of ESPONDA Associates, Inc.   It is believed he also serves as a board member for a number of the Housing Corporations which operate for the benefit of individual chapters of the Alpha Epsilon Pi Fraternity, Inc.

4.      At all times relevant hereto, Defendant Borans has been an Indiana resident, and at all times relevant hereto, served as Executive Director of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.  He also serves as Secretary/Treasurer of ESPONDA Associates,

Inc.  It is believed he also serves as a board member for a number of the Housing Corporations for individual chapters of the Alpha Epsilon Pi Fraternity, Inc.

5.      At all times relevant hereto, Defendant Leider has been a Canadian citizen, serving as an Officer of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

6.      At all times relevant hereto, Defendant Cohon has been a Florida resident serving as an Officer of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

7.      At all times relevant hereto, Defendant Jacobson has been an Arizona resident serving as an Officer of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

8.      At all times relevant hereto, Defendant Knapp has been a Florida resident serving as an Officer of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

9.      At all times relevant hereto, Defendant Farbman has been a Florida resident and a member of the Supreme Board of Governors of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

10.      At all times relevant hereto, Defendant Oshins has been a New Jersey resident and a member of the Supreme Board of Governors of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

11.      At all times relevant hereto, Defendant Brook has been a Tennessee resident and a member of the Supreme Board of Governors of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

12.     At all times relevant hereto, Defendant Waitz has been an Illinois resident and a member of the Supreme Board of Governors of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

13.     At all times relevant hereto, Defendant Silverstein has been a New York resident and a member of the Supreme Board of Governors of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

14.     At all times relevant hereto, Defendant Goldberg has been an Arizona resident and a member of the Supreme Board of Governors of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

15.     At all times relevant hereto, Defendant Horn has been a Florida resident and a member of the Supreme Board of Governors of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

16.     At all times relevant hereto, Defendant Sirota has been a Florida resident and a member of the Supreme Board of Governors of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

17.     At all times relevant hereto, Defendant Dovi Wieder has been an Israeli citizen, serving as an Officer of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.

18.     At all times relevant hereto, Defendant Schiff has been an Illinois or Florida resident and a member of the Supreme Board of Governors of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.  He is also vice president of ESPONDA Associates and it is believed

he also serves as a board member for a number of the Housing Corporations for individual chapters of the Alpha Epsilon Pi Fraternity, Inc.

19.     At all times relevant hereto, Defendant Fleischer has been an Indiana resident and an Assistant Executive Director of the Alpha Epsilon Pi Fraternity, Inc., a New York corporation whose principal place of business is in Indianapolis, Indiana.  He is also treasurer of ESPONDA Associates, and it is  thought he also serves as a board member for a number of the Housing Corporations for individual chapters of the Alpha Epsilon Pi Fraternity, Inc.

20.     At all times relevant hereto, Defendant Fradkin has been a California resident and a member of the Fiscal Control Board of the Alpha Epsilon Pi Fraternity, Inc. It is believed he also serves as a board member for a number of the Housing Corporations for individual chapters of the Alpha Epsilon Pi Fraternity, Inc.

21.     At all times relevant hereto, Defendant Pierce has been a New York resident and a member of the Fiscal Control Board of the Alpha Epsilon Pi Fraternity, Inc.  It is believed he also serves as a board member for a number of the Housing Corporations for individual chapters of the Alpha Epsilon Pi Fraternity, Inc.

22.     At all times relevant hereto, Defendant Karno has been a Louisiana resident and a member of the Fiscal Control Board of the Alpha Epsilon Pi Fraternity, Inc.  It is believed he also serves as a board member for a number of the Housing Corporations for individual chapters of the Alpha Epsilon Pi Fraternity, Inc.

23.     Defendant John Does 1-25 are individuals and/or entities whose identifies are not currently known to Plaintiff or his counsel.

## JURISDICTION AND VENUE

24.    This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. 1332, as there is total and complete diversity between the parties.

25.    Venue is proper in this Court pursuant to 28 U.S.C. 1391, as this is the United States District Court for the district where the Alpha Epsilon Pi Fraternity, Inc. has its principal place of business.  Plaintiff's claims against the various Defendants all stem from their relationship as Officers and/or Employees of the Alpha Epsilon Pi Fraternity, Inc., whose principal place of place is in Indianapolis, Indiana.

26.    The amount in controversy between the parties exceeds $75,000.00.

## BACKGROUND OF FRATERNITY ENTITIES

27.    Alpha Epsilon Pi Fraternity, Inc. ("AEPi") was incorporated in New York on October 7, 1914.  Today it operates out of corporate offices located at 8815 Wesleyan Road, Indianapolis, IN, 46268.  Its mission is to develop leadership for the Jewish community.

28.    ESPONDA Associates, Inc. ("ESPONDA") provides property management services to fraternal housing corporations that offer housing to AEPi members on various campuses.   ESPONDA was incorporated in Indiana on January 20, 2010.  According to its incorporation filings, ESPONDA operates out of the same corporate offices as AEPi at 8815 Wesleyan Road, Indianapolis, Indiana, 46268.

29.    The Alpha Epsilon Pi Foundation, Inc. ("The Foundation") was incorporated in New York state on September 7, 1945.  It operates as a 501(c) 3 charity and supports the religious and educational goals of AEPi and it's members.  It operates out of the same corporate offices as AEPi at 8815 Wesleyan Road, Indianapolis, Indiana, 46268.

30.     The Fraternity is governed by a board of directors more commonly referred to as the Supreme Board of Governors, or SBG.

31.     The SBG consists of 11 positions as follows:

a. President or "Supreme Master."
b. President-elect or "Supreme Master Elect."
c. Secretary or "Scribe."
d. Treasurer or "Exchequer."
e. Sergeant-At-Arms or "Sentinel."
f. Three Alumni Members-At-Large or "Supreme Governors."
g. Two Undergraduate Members-At-Large or "Undergraduate Supreme Governors."
h. Past President or Past Supreme Master

32.     Generally, members of the SBG advance one slot every year or two until they rise to the position of "Supreme Master".

33.     The Fraternity's Constitution also calls for the establishment of a Fiscal Control Board consisting of between 7 and 17 members.  This board is commonly referred to by its acronym, FCB.

34.     According to Article XI, Section 7, of AEPi's Constitution, the FCB has the following responsibilities:

(a) To establish and supervise all financial policies of the International Fraternity;

(b) To raise, receive, disburse and invest all endowment monies and properties of the International Fraternity;

(c) To supervise the financial affairs of all national and chapter Housing Corporations and retain the custody of all instruments of title and other documents pertaining to chapter and national properties and assets;

(d) To approve and supervise all national fundraising projects or plans and to administer the endowment and other national funds.

35.     During Plaintiff's tenure on the Supreme Board of Governors, he recalls only one instance when financial information, other than a makeshift budget, was

10

presented.  And, in that instance, Defendants Borans and Stein insisted that all financial documents be returned prior to leaving the meeting room.

36.     Most, if not all, of the Involuntary Defendant's Chapters are unincorporated entities.

37.     AEPi established Housing Corporations for many of its Chapters.   The Housing Corporations are supposed to be separate and independent legal entities, operating for the benefit of the Chapters and their undergraduate members, and whose responsibilities include providing housing and lodging to undergraduate members of that particular Chapter.

38.     Per AEPi's Constitution, the Fiscal Control Board oversees the various Housing Corporations.

39.     The Housing Corporations contract with ESPONDA to manage their properties.

40.     The Housing Corporations are supposed to operate as independent entities. Instead, they are dominated and controlled by Defendants Stein, Borans, Schiff, Fradkin, Pierce, and Karno, who serve on many, if not most of the Housing Corporation's Boards.

41.     This creates an inherent conflict of interest, as the Fiscal Control Board is responsible for overseeing the operations of all Housing Corporations.  In turn, these Housing Corporations then are required to contract with ESPONDA Associates for services, under what essentially are no-bid contracts, and all of the foregoing are run by the very same people who are responsible for their oversight.  This eliminates any all checks, balances and safeguards as respects the finances and operations of each of the foregoing entities.

11

42.     Plaintiff also has reason to believe that inadequate oversight has been in place over monies belonging to individual Housing Corporations, so much so that it cannot be determined what money belongs to which Housing Corporation.

### THE FRATERNITY HAS LONG BEEN CONTROLLED BY A GROUP WHICH REFERS TO ITSELF AS THE "CHICAGO MAFIA"

43.     At the time that he was first elected to the SBG, Plaintiff was pulled aside by Defendants Cohon and Leider who wanted to inform him about how a small group of people, who proudly and collectively refer to themselves as the "Chicago Mafia", controlled all AEPi activities and decisions for many years.

44.     Defendants Cohon and Leider told Plaintiff that Defendant Stein was the "Don" of the "Chicago Mafia" and that everyone needed to work together to check his power and try to control what often amounted to his unilateral decision making.

45.     After observing the behavior of Defendant Stein over a period of time, Plaintiff was able to validate the concerns expressed by Defendants Cohon and Leider, and became very cautious about his interactions with Stein and other members of the "Chicago Mafia".

46.     Membership on the Fiscal Control Board and most Housing Corporations is reflective of the "Chicago Mafia" influence.  Notable members of both organizations include Defendants Stein, Schiff, Fradkin, Pierce, and Karno. In all cases, people belonging to or aligned with the "Chicago Mafia" retain voting majority control of the Fiscal Control Board and every Housing Corporation's board.

47.     Subsequent to the August, 2017 SBG meeting, at which Plaintiff was suspended without notice, a posting was made to Facebook boasting about the anointing of new members of the "Chicago Mafia", who are also younger members of the SBG.

48.     A well known member and former "Don" of the "Chicago Mafia" was Irving Axelrod.  Axelrod, now deceased, was a Past Supreme Master of AEPi.  Defendants Stein and Schiff have also referred to Axelrod as their "mentor" on matters pertaining to the fraternity.

49.     Unbeknownst to Plaintiff, it had always been Axelrod's exclusive "job" within the fraternity to manage housing renovation projects, so when Plaintiff offered to help oversee the renovations of the University of Cincinnati chapter house discussed elsewhere in this suit, Axelrod became extremely and visibly angry and offended.  This resulted in Defendant Stein chastising Plaintiff publicly at a subsequent SBG meeting for attempting to get involved in an area that Axelrod exclusively controlled, even though Plaintiff's actions were clearly for the benefit of the Chapter and their members.  To put it another way, "Chicago Mafia" relationships were put ahead of AEPi's best interests.

50.     Subsequently, Plaintiff encountered Axelrod at a fraternity event, and Axelrod shouted that he was working hard to have Plaintiff expelled from the Fraternity. Both the votes to suspend him and put him up for expulsion were, in part, driven by the "Chicago Mafia's" desire to satisfy Axelrod's death-bed directive. Once again, the interests of the "Chicago Mafia" were put ahead of AEPI's best interests.

## PLAINTIFF'S HISTORY OF DEVOTED SERVICE TO HIS FRATERNITY

51.     Michael M. Fishel was initiated into Alpha Epsilon Pi Fraternity in either 1976 or 1977.  He was the founding president (more commonly referred to as "Master" of the chapter at Ohio University.

52.     In the early 2000's, Plaintiff was invited by AEPi's leadership to re-engage as a national volunteer.  In this capacity he served as chapter advisor of the University of Cincinnati Chapter, and as the member delegate and director of FRMT, LTD., a captive-

insurance company through which AEPi purchases its general liability insurance.   While serving on the board of FRMT, Plaintiff developed and implemented a plan to restructure the captive's reinsurance.  To date, this changed has saved FRMT members a combined total of over $7.5 million, 5% or $375,000 of which directly inures to the benefit of AEPi.

53.     In 2008, Plaintiff entered into a contract to purchase the real estate located at 2623 University Court, Cincinnati, OH 45219 to be used by the Fraternity's chapter at the University of Cincinnati. Plaintiff committed over $500,000 to the purchase, renovation and planned leasing of this house to the Fraternity.  At the Fraternity's request, Plaintiff subsequently assigned his purchase rights, at no benefit or gain to Plaintiff, to the Fraternity so that they could benefit from the long-term ownership of this property. Today this property is conservatively valued in excess of $1 million.

54.     Plaintiff's total lifetime donations to the Alpha Epsilon Pi Foundation exceed $100,000, possibly eclipsing the total combined historical donations or all other SBG members.  In recognition of this exceptional and unselfish pattern of charitable giving, the AEPi Foundation bestowed upon Plaintiff it's highest donor title:  Centennial Founder.

55.     Plaintiff also created and funded the "Fishel Family Award" within the AEPi Foundation which was given to young alumni to recognize their professional accomplishments and serve as a way to re-connect them to both the Fraternity and Foundation to develop the next generation of donors.  Plaintiff not only paid to have the awards produced and engraved, but he traveled, at his own expense, to many of the award ceremonies throughout the country.

56.     In support of AEPi's 100th anniversary in 2013, Plaintiff, on behalf of the AEPi Foundation, successfully solicited between $40,000 and $50,000 in charitable

donations from various alumni.  Again, the amount raised by Plaintiff exceeded many times over the combined amounts raised by all other SBG members.

57.     In the summer of 2009, Plaintiff was nominated and elected to AEPi's Supreme Board of Governors (SBG), the main governing body of the fraternity.  He served in various capacities until August, 2016, at which time he was elected to second highest position: Supreme Master Elect.  People reaching this level are slated to assume the title of Supreme Master (International President) once the term of the current Supreme Master ends.

58.     Sadly, and through no fault of his own, Plaintiff never had the privilege of being installed as Supreme Master because he was forced off the Supreme Board of Governors after identifying and disclosing substantive improprieties and outright illegal acts by and on behalf of the paid fraternity executive staff as well as other long-time serving volunteers.

59.     This Complaint, along with the additional causes of action outlined herein, is being filed as a direct result of the retaliatory actions which Plaintiff was subject to as a result of his insistence that the SBG and others within the AEPi organization admit to the wrongdoings which occurred, and implement appropriate safeguards to assure that they were never repeated.

## DEFENDANTS' ACTIONS AGAINST PLAINTIFF

60.     In the spring 2016, Plaintiff was approached by an AEPi employee who expressed concern that the Fraternity was running short on money.

61.     Plaintiff found this report disconcerting and realized he, and the other Board members, owed AEPi a fiduciary duty to determine if this information was accurate, and if so, what caused it to occur.

62.     On June 27, 2017 sent an e-mail to Jim Fleischer, Assistant Executive Director of AEPi, asking for a current income statement and balance sheet.  Fleischer replied the same day stating that he was out on vacation but would send when he returned to work the following week.  (See Exhibit 1).

63.     On July 5, Plaintiff sent Fleischer a second e-mail reminding him to send the requested financial data.  (See Exhibit 1).

64.     This same day, Andrew Borans, Executive Director of AEPi, responded via e-mail in place of Fleischer stating that he did not like to send this information out via e-mail.  His e-mail (Exhibit 1), stated in part:

> At the annual convention meeting we pass them out and collect them. We've done that for years. I'm uncomfortable changing that or sending anything out with our financials via E-mail.

65.     The above statement is incorrect.  While "budgets" are generally passed out one time per year, actual financial data has never been provided to SBG members on a regular basis.

66.     The e-mail also stated:

> BTW- please don't think there's anything to hide. I'd be happy to crow our excellent success from the top of rooftops but that simply isn't what's done. Just so you know - we had another banner year.

67.     This may or may not be correct, because all requests for financial reports by Plaintiff have and continue to be ignored.  This is despite that the fact that Plaintiff was a Board member, and in its annual IRS 990 filings, signed by Defendant Borans in his capacity as Executive Director, it states that AEPi will release its financial information to the general public upon request.

68.     On July 6, 2017, Plaintiff sent an e-mail to Defendant Cohon, and other members of the SBG Executive Committee, asking them to engage in a conference call to discuss this matter further.  But, instead of honoring Plaintiff's request which would have enabled this matter to be handled in a discrete and prompt manner, Defendant Cohon or others forwarded Plaintiff's e-mail to Defendants Stein and Borans, and, perhaps to others who are unknown to Plaintiff at this time.  (See Exhibit 2).

69.     On July 8, Plaintiff sent e-mail to Defendant Cohon asking whether the Supreme Board of Governors could vote on Defendant Borans's annual bonus at its next meeting.  Defendant Cohon replied as follows – (See Exhibit 3):

Michael,

I think this is bordering on going too far now.....

Richard [Stein, chairman of the Fiscal Control Board] was in Indy last week, not this week and salaries and bonuses were discussed and I believe bonuses disbursed like they have been for many years.  The SBG has not discussed or voted on bonuses for staff since I have been on it.  The Personnel Practices Committee is supposed to do so and recommend such raises and bonuses**. But, that committee has really been non-functioning for many years."** [Emphasis added]

Richard and I discussed the bonuses and salaries and I had no issue with them, since we have had strong results and continue to do so....we can certainly discuss in Las Vegas as a board....

I am finishing a work project today but should be available to speak later or before your call tomorrow.

**I just want to be clear here....you have accused a life-long employee and who I consider his protege of theft or <u>mismanagement of funds without offering any proof</u>, simple accusations....you will forgive me if I don't jump to take the checkbooks in Indy, but I trust the men who run the day to day operation.  This is not simply a business nor do I believe it should be treated as such.  <u>But I do agree that often times we don't follow our own procedures</u>.** [Emphasis added]

In regard to Andy's contract, I believe it self-renews and probably should be voted on annually, but can you recall a vote that affirms it?  I don't ever recall such a vote?  Could we improve standard procedures, yes....do I have any reason to not trust these men, no....

Too often in this Fraternity, we have fallen victim to hidden agendas and conspiracy theories....99% of them have been horseshit.  **We should be celebrating the successes of our organization yet we now find this accusation and Roitman running from the floor."**

 Hope you have more fun when you are in the chair than I**, but accusing the guys who have proven themselves as only assets to the organization is not going to go very good..."** [Emphasis added]

70.     On July 9, 2017, Plaintiff sent an e-mail to Defendant Cohon and the other executive committee members to cancel a call that had been scheduled to discuss this matter, because one or more of the people who were supposed to be on the call told Defendants Borans and Stein about Plaintiff's concerns.  (See Exhibit 4).

71.      One day during the week of July 10, Defendant Cohon called Plaintiff and told him that as a result of his inquiries, no one on the Supreme Board of Governors wanted anything to do with him.  He said Plaintiff should consider resigning.

72.     Plaintiff asked Defendant Cohon to arrange a call with the Board so he could explain his concerns, as part of his not only his fiduciary duty, but that of the other Board members as well.  That call was held on July 16. Plaintiff sent out a summary of his position to each Board member prior to that call.  (See Exhibit 5).

73.     On July 17 and 18, 2017, Plaintiff called several Board members to get their reactions to the call and quickly learned that the Board unanimously passed a "no confidence" motion and was going to begin proceedings, in accordance with the constitution, to remove Plaintiff from his position on the Supreme Board of Governors.

74.     On July 18, 2017, Plaintiff, having been told by Defendant Cohon that he would not survive the pending "no confidence" vote by the remaining board members, submitted his resignation from the Supreme Board of Governors. (See Exhibit 6).

75.     On July 18, 2017, Harold Berman, Past Supreme Master of AEPi, sent e-mail to various AEPi board and volunteer members expressing concern about Plaintiff's resignation and confirming that he too has been critical of the "...financial record keeping of the fraternity in the past."  (See Exhibit 6).

76.     On July 18, 2017, Defendant Stein sent Plaintiff an e-mail saying, "Had you picked up the phone and asked questions, they would have been answered."  Defendant Stein made this comment, even though after becoming aware of Plaintiff's concerns, he threatened to fire whatever employee of AEPi notified Plaintiff of the financial issues. Plaintiff replied by again asking that all requested financial information and accounting statements be made available.  (See Exhibit 7).

77.     Plaintiff has never received the requested documents which according to the tax returns that AEPi has filed, states that these documents will be made available to the public upon request and Defendant Stein offered to make them available upon request, which he never has done (See Exhibit 7).

78.     AEPi holds its annual convention each August.  This is when new SBG members are elected.

79.     During the August, 2017 Board meeting, Plaintiff let it be known that he planned to fly from Cincinnati to the meeting site in Las Vegas to run and reclaim the SBG position that he was forced to resign from.

80.     In an attempt to silence Plaintiff and keep him from sharing his concerns with other AEPi members, at the convention's Wednesday SBG meeting, which preceded the Friday Supreme Council meeting where new officers would be elected, Defendants conspired and voted to suspend Plaintiff under the pretext of "conduct unbecoming a brother," without specifying what the supposed misconduct was, and without giving Plaintiff due process as spelled out under AEPi's Constitution.

81.     To further punish, humiliate, and silence Plaintiff, the SBG agreed to not inform Plaintiff of their vote until and unless Plaintiff arrived in Las Vegas.  Were that to occur, they planned to use this vote as the basis to deny Plaintiff admission to the meeting room.  They also knew that such action would further disparage Plaintiff's reputation and standing among other members of the Fraternity.

82.     Thankfully, Michael Roitman, a former high-level employee of the Fraternity who was in the meeting room at the time that the SBG vote to suspend Plaintiff was held, made Plaintiff aware of the Board's action.  Had this not occurred, Plaintiff would have spent over a thousand dollars of his own money to travel to Las Vegas and be publicly humiliated.

83.     In response for revealing the SBG's duplicitous conspiracy to Plaintiff, the SBG suspended Michael Roitman for, coincidentally, "conduct unbecoming a brother."

84.     After the Las Vegas convention, Plaintiff learned that he could obtain copies of AEPi's IRS 990 filings through a website called Charity Navigator.  This website provides public access to the very documents that Defendant Stein and others denied Plaintiff access to.

85.     Plaintiff downloaded the Fraternity's tax returns for 2013, 2014, 2015 and 2016 (the only years available) and learned that the Fraternity had sustained a cumulative loss of $1,565,527 for those four years.  It was now clear why his prior requests for these documents was improperly blocked.

86. In reviewing AEPi's 990 filings, Plaintiff also determine that false responses were given to three required attestations.  The first, which was mentioned elsewhere in this complaint, affirmed that the Fraternity provided its financial data to members of the public upon request.  The second affirmed that the board of directors, in this case, the Supreme Board of Governors, reviewed and approved the financial reports before they were filed with the IRS. And, the third, affirmed that the executive officers' salaries were voted on and approved by the board of directors, in this case, the Supreme Board of Governors, each year.  In fact, Defendants' actions and e-mail's proves that none of the forgoing ever occurred, despite the Defendants' representations to the contrary.

87.     The loss for the 2013 tax year most clearly illustrate the lengths that the Defendants have gone to conceal the Fraternity's financial performance.  In July, 2013, Defendant Borans called Plaintiff and ask him, in Plaintiff's capacity as Supreme Exchequer, to write and file a financial report for the upcoming summer convention SBG briefing book.  Plaintiff told Defendant Borans that he did not have access to the data needed to compile this report, at which point Defendant Borans verbally supplied Plaintiff with the financial data to include in this report.  This data included a reported loss of $225.554. Based on this information, Plaintiff issued the requested report to Defendant Borans via e-mail on July 19, 2013. (See Exhibit 8).

88.     After reviewing AEPi's actual tax return filed for tax year 2013, Plaintiff found the reported loss to be $764,925 or almost three times as high as that which Defendant Borans represented.

89.     On October 22, 2017, Plaintiff sent an e-mail to the SBG outlining in detail the financial losses that AEPi had sustained and which had never been publicly disclosed. Plaintiff's e-mail went on to inform the SBG about the fraudulent tax filings and other relevant matters.  (See Exhibit 9).

90.     On the basis of this newly discovered information, Plaintiff asked to be reinstated to his board position and to have Defendants Borans and Stein removed from their various positions and have their Fraternity memberships suspended for this illegal conduct.

91.     Although the SBG never acknowledged or responded to Plaintiff's October 22, 2017 e-mail, Plaintiff received a letter in February, 2018 advising that the SBG had met and voted unanimously to put Plaintiff up for expulsion from the Fraternity for "conduct unbecoming a brother," without defining what the supposed misconduct was. Plaintiff received this notification approximately two months after the meeting and vote purportedly occurred.  No explanation was provided for why it took two months for the SBG to notify Plaintiff of their vote.

## DEFENDANTS' OTHER WRONGFUL ACTIONS

92.  In 2013, AEPi celebrated its 100th birthday by holding a large convention at the Waldorf Astoria in New York City. For this event, Defendant Stein hired his daughter, who resided in Chicago, to serve as a paid event planner, despite the fact that local and

more qualified service providers were abundantly available in New York City.  Stein's hiring of his daughter, without consent and approval by the Supreme Board of Governors, constitutes an Excess Benefit Transaction and undue enrichment for a member of his immediate family.  This is a clear violation of Internal Revenue Service Guidelines.

93.   Throughout the course of his Board service, Plaintiff made repeated verbal inquiries to other more senior SBG members regarding approval of executive staff compensation. Plaintiff always received the same general response:  that being that these matters were handled by the Personnel Practices Committee, a committee which was often appointed, but which never seemed to meet.  Upon moving into the position of Supreme Master Elect, the second highest position within the Supreme Board of Governors, Plaintiff began to make more diligent written inquiries regarding this matter. As outlined in correspondence to Plaintiff from Supreme Master Scott Cohon (see Exhibit 3), Cohon admitted that Richard Stein has always unilaterally been responsible for setting the paid executive staffs' compensation, including salary and bonus.  However, this affirmation by Cohon, directly contradicts the representations and attestations made in almost all AEPi's IRS 990 filings, all of which were signed by Borans, attesting to the fact that this compensation had been voted on and approved by the SBG each year.  Based on these actions, it is clear to Defendants Borans and Stein conspired to conceal these compensation matters which constitutes an Excess Benefit Transaction under Internal Revenue Service Guidelines.

94.  IRS Guidelines include a "safe harbor" to the Internal Revenue Code, designed to help tax- exempt organizations minimize the risk that the IRS will later determine that

their organization has engaged in excess benefit transactions.    Under the safe harbor rule, payments made to a disqualified person are deemed reasonable if:

   a) The board of directors approves the payment in advance;
   b) Prior to making its determination, the board finds that the payment was reasonable, based on relevant outside comparability data; and
   c) When making its determination, the authorized body adequately documents the basis for its decision.

95.  With respect to the compensation earned by Defendants Borans and Fleischer, none of the above requirements were ever met.   Instead, their compensation was determined solely by one individual:  Defendant Stein.   As many are likely to testify, Defendants Stein, Borans and Fleischer are all considered to be "the best of friends", thus clouding and obfuscating the transparency, or lack thereof, of these annual transactions.

96.   A review of available AEPi IRS 990 filings shows that the Fraternity has consistently sustained financial losses which were never disclosed to the Supreme Board of Governors or AEPi's members.

97.   For each year that losses have been incurred but never disclosed, Defendants Stein, Borans and Fleischer asked the Supreme Board of Governors to pass a "set-aside" resolution.   This motion was approved at the summer board meeting each year.

98.   Set aside resolutions are required by the IRS to permit non and not-for-profit entities to roll over any "profits" they have from one financial year to another without having those profits taxed.   The funds that are rolled over are designated to be used for only those purposes permitted by law.

99.   Because this conduct happened repeatedly over many years, it is clear that Defendants Stein, Fleischer and Borans used the passage of set aside resolutions as a way to intentionally hide and deceive the SBG and AEPi's other members as to the Fraternity's true operating losses and financial condition.

100.   A review of available annual financial statement for both AEPi and ESPONDA Associates shows a clear pattern of profits and cash being redirected from the Fraternity to ESPONDA, the housing operation.  Though ESPONDA professes to operate as a related entity to the Fraternity, its by-laws actually permit ESPONDA to operate outside *ultra vires* and without any oversight from the Fraternity.  In fact, ESPONDA's by-laws show its board to hold perpetual terms of service with members replacing one another without any oversight or input by the Fraternity if and when a vacancy occurs. Today ESPONDA is believed to hold millions of dollars in cash and other assets which it has generated from providing service to AEPi's undergraduate members under no-bid contracts which were never reviewed or approved by any other arm of the Fraternity.

## STEIN & OTHERS CONSPIRE TO CIRCUMVENT TERM LIMITS ON HIS TENURE AS A FISCAL CONTROL BOARD MEMBER

101.   AEPi's constitution limits members from serving more than three consecutive terms or 3 years each (total of 9 consecutive years), before requiring them to leave the board for a minimum period of at least one year.

102.   Through various schemes and arrangements, Defendant Stein has successful managed to skirt these constitutionally-mandated term limits for at 12 years, and probably much longer.

103.   In 2016 or 2017, Stein conspired with other Fiscal Control Board and Supreme Board of Governors members to extend his reign even further through the passage of a resolution declaring that AEPi's minutes were "unclear" as to who has served for what period of time.  This resolution, which was passed almost unanimously by the SBG with only the Plaintiff voting negative or abstaining due to pressure, violates AEPi's constitution and paves the way for Stein to retain control of the Fraternity's financial operations for most of the next decade.

## <u>COUNT I – BREACH OF FIDUCIARY DUTY</u>

104.   Plaintiff realleges and incorporates by reference each and every allegation contained above.

105.   Prior to filing this action, Plaintiff brought these issues to the attention of the Individual Defendants so that they would have a chance to remedy these issues without the necessity of filing suit, and the Individual Defendants have failed to exercise their fiduciary duties and take appropriate action to investigate and address AEPi's financial losses, and the inherent conflicts of interest which exist.

106.   By virtue of their respective positions, the Individual Defendants are fiduciaries of the Alpha Epsilon Pi Fraternity, Inc. and all of all of its members and owe to them the duty to conduct the business of the Fraternity loyally, in good faith, carefully, diligently and prudently. This cause of action is asserted based upon the Individual Defendants' acts which constitute breaches of fiduciary duties.

107.   The Individual Defendants breached their fiduciary duty, including the duty of care to AEPi and its members by not only failing to act as an ordinarily prudent person

would have acted in a like position, but also by acting with gross recklessness and in conscious disregard of their responsibilities to act on the interests of AEPi.

108.  As a result of the Individual Defendants' wrongful conduct and actions, AEPi has suffered and will continue to suffer considerable financial damage.

109.  The Individual Defendants, singly and in concert, engaged in the aforesaid conduct in the intentional breach and/or reckless disregard of their fiduciary duties to the Organization and conspired to, and did abuse the control vested in them by virtue of their high-level positions in AEPi.

110.  Rather than fulfill their fiduciary duties, the Individual Defendants took extreme and improper actions to try to silence Plaintiff.

111.  By reason of the foregoing, the Individual Defendants breached their fiduciary duties to AEPi and its members.

112.  AEPi and its members have been injured by reason of the Individual Defendants' intentional and/or reckless disregard of their fiduciary duties to AEPi.

113.  The extent and amount of these losses is unknown until an accounting is conducted.

## <u>COUNT II – ABUSE OF CONTROL</u>

114.  Plaintiff realleges and incorporates by reference each and every allegation contained above.

115.  The Defendants' conduct constituted an abuse of their ability to control and influence AEPi for which they are legally responsible.

116.  As a proximate result thereof, AEPi has been damaged and will continue to suffer damages, and will continue to sustain substantial damage.

117.  The Individual Defendants' breaches of their fiduciary duties have caused AEPi to incur financial losses and damages and has had, and will continue to have, destructive effects on the Organization.

118.  The extent and amount of these losses is unknown until an accounting is conducted.

WHEREFORE, the Plaintiff prays for the following relief:

1.      An award of compensatory damages from the Defendants, jointly and severally, in excess of $75,000.00.

2.      An award of punitive damages in an amount to determined.

3.      An accounting to determine the extent of the Involuntary Defendant's financial losses, as well the losses of the Housing Corporations whose funds may have been mismanaged, as a result of the Individual Defendants' breaches of their fiduciary duties and abuse of control.

4.      Repayment by Defendant Stein of those amounts determined to be Excess Benefit Transactions, including accrued interest, for funds paid to his daughter, and excess, unapproved compensation paid over the years to Defendants Borans and Fleischer.

5.      Repay the millions of dollars in profits reaped by ESPONDA under no-bid contracts that its officers essentially awarded to themselves, to the Fraternity.  This will assure that these monies are used to support the on-going programming and housing needs of AEPi's undergraduate members.

6.      Extraordinary equitable and/or injunctive relief as permitted by law, equity, and state statutory provisions sued hereunder, so as to assure that Plaintiff and AEPi have an effective remedy.

7.      For an award of his attorney's fees and costs in pursuing this litigation.

8.      Any and all other relief to which Plaintiff may be entitled.

*/s/Thomas F. Glassman*
Thomas F. Glassman
Bonezzi Switzer Polito & Hupp Co., LPA
312 Walnut Street, Suite 2530
Cincinnati, Ohio 45202
Phone (513) 345-5502
Fax     (513) 345-5510
Email  tglassman@bsphlaw.com
*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a jury trial on all such issues which are triable before a jury.

/s/Thomas F. Glassman
Thomas F. Glassman